```
UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION
```

| | |
|---|---|
| JOHN T. ROUGEAU | CIVIL ACTION NO. 04-1691 |
| VERSUS | U.S. DISTRICT JUDGE DEE D. DRELL |
| MICHAEL BOONE, et al | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment, **Doc. # 26** filed by defendants, Boone, Hudson, Patterson, Perez and Hilton, referred to me by the district judge for Report and Recommendation. This suit is one for damages filed under the Civil Rights Act, 42 U.S.C. 1983, et seq.

On August 12, 2004, plaintiff sued defendants for civil rights violations he alleges occurred at the Mid-State Shrine Circus on September 7, 2003. The claims made were under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under Louisiana law for false arrest, false imprisonment, and defamation. Plaintiff's constitutional claims allege violations of plaintiff's right to be secure in his person, his right not to be deprived of life, liberty or property without due process, the right to equal protection of the laws and his right to freedom of association.

Background Facts

The facts are essentially undisputed. On September 6, 2003, Rougeou had been hired to assist Doug Terranova with animals and equipment at the mid-State Shrine Circus (Circus) at the Rapides Parish Coliseum. Terranova had contracted with the Circus to provide elephants and tigers for the two day event sponsored by the Shrine Club for the benefit of crippled children.

On September 6th, defendant Hudson, a reserve deputy, was approached by reserve deputy Perez, and was informed by Perez that Rougeou had been arrested in the past for pornography involving juveniles. Hudson saw plaintiff assisting with loading and unloading children on the rides and with taking tickets. Hudson became concerned for the safety of the children and spoke with the Beards about the problem. One of the Beards, Glen or Ronnie, asked that Rougeou be removed from the Circus. Hudson then approached Rougeou as he was taking up tickets for the event and ordered plaintiff to leave the premises because of his criminal history. Hudson told Rougeou that if he did not leave, he would be arrested. Hudson, the reserve officers' supervisor at the event, instructed defendants reserve officers Boone and Perez to escort plaintiff out of the event. Hudson later prepared an incident report and confirmed that, indeed, plaintiff had been arrested on September 12, 2000 for pornography involving juveniles.

Terranova then spoke to Shrine Club officials Glen and Ronnie

Beard, and secured Rougeou's return the next day. On that day, it is alleged, an officer followed Rougeou around while he assisted at the Circus.

Law and Analysis

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

Local Rule 56.2W also provides that all material facts set

forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried. Since plaintiff has not attempted to controvert any of the specific facts stated in the defendant's statement of undisputed facts, those facts will be deemed admitted for purposes of this motion.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett,</u> 106 S.Ct. 2548 at 2552; <u>International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc</u>., 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. <u>Little v. Liquid Air Corporation</u>, 37 F.3d 1069, (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." <u>Izen v. Catalina</u> 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment

4

should be denied. Little, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. Austin v. Will-Burt Company, 361 F. 3d 862, (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Celotex at 2553.

The individual defendants are entitled to assert the defense of qualified immunity. The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Qualified immunity protects a police officer from personal liability for discretionary acts which do not violate well established law. Officers have qualified immunity if their

actions could reasonably have been thought consistent with the right they are alleged to have violated. Richardson v. Oldham, 12 F.3d 1373, 1380-81 (5th Cir. 1994), and cases cited therein. Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002).

Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties:

> "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law."

Bazan v. Hidalgo County, 246 F.3d 481, 489 (5th Cir. 2001), citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992).

The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. Hare v. City of Corinth, 135 F.3d 320, 325 (5th Cir. 1998), and cases cited therein.

The first step is to determine whether the plaintiff has alleged violation of a clearly established constitutional right.

This analysis is made under the currently applicable constitutional standards. Hare, 135 F.3d at 325. A constitutional right is clearly established if, in light of pre-existing law, the unlawfulness is apparent. Officials must observe general, well-developed legal principles. Doe v. Taylor Independent School Dist., 15 F.3d 443, 445 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70 (1994).

The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law. Hare, 135 F.3d at 325-36. Objective reasonableness is a question of law for the court. The analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits). For qualified immunity, the subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident and, under that standard (the minimum standard not to be deliberately indifferent), the actions of the individual defendants are examined to determine whether, as a matter of law, they were objectively unreasonable. Hare, 135 F.3d at 328.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of

7

the objective state of the law at the time of his conduct. <u>Douthit v. Jones</u>, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. <u>Douthit</u>, 619 F.2d at 533.

Plaintiff's constitutional rights of association, 4th Amendment right to be secure in his person and due process and equal protection rights were clearly established in 2003. However, plaintiff has failed to show that defendants' conduct was objectively unreasonable in light of those clearly established rights. Plaintiff has not pointed out to the court how defendant's conduct interfered with his right to be secure in his person. See <u>Creamer v. Porter</u>, 754 F.2d 1311 (5th Cir. 1985). The police did not search or arrest the plaintiff; plaintiff was merely instructed, at the request of the Circus officials, to leave the Circus. His failure to do so would have constituted a criminal trespass under LSA-R.S. 14:63.3. Although plaintiff makes vague allegations about the use of force, no evidence of the use of force is presented. In any event, plaintiff has not shown any injury. See <u>Williams v. Bramer</u>, 180 F.3d 699 (5th Cir. 1999).

Neither has plaintiff proven how he claims his right of intimate association or his right of expressive association was

8

violated by defendants. This is not a case involving familial association which lies at the heart of intimate association. See Kipps v. Caillier, 205 F.3d 203 (5th Cir. 2000). Plaintiff has not shown that he was engaged in expressive association. See City of Dallas v. Stanglin, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18, (1989).Plaintiff had no right to be present at the Circus after the Circus asked that he be made to leave. To the extent plaintiff is claiming retaliation for exercising his 1st Amendment right to free speech by writing a letter critical of law enforcement officials, he has failed to submit evidence supporting his claim and thus he has failed to prove such a violation. Investigations, even accusations, are not cognizable under the 1st Amendment. Colson v. Grohman, 174 F.3d 498 (5th Cir. 1999).

Finally, plaintiff has offered no explanation how plaintiff's due process rights or equal protection rights were violated by defendants. Reputation alone is not a liberty or property interest protected by the Due Process Clause. Paul v. Davis, 96 S. Ct. 1155 (1976). Further, in order to establish an equal protection violation under the Fourteenth Amendment, plaintiff must show that the defendants were selectively enforcing a state statute based upon impermissible grounds, such as by distinguishing between groups. Rolf v. City of San Antonio, 77 F.3d 823, 828 (5th Cir. 1996). Here there is no evidence that plaintiff was impermissibly treated differently in the defendants' enforcement of public safety

and trespass laws. Citation to cases holding otherwise is conspicuously absent from plaintiff's brief (see Plaintiff's brief, p. 11).

Plaintiff's constitutional rights were not violated by defendants. Defendants are, therefore, entitled to dismissal based on qualified immunity.

Sheriff Hilton--Official and Individual Capacity Suits

Sheriff Hilton is sued only in his official capacity. Rougeou alleges Sheriff Hilton failed to train his reserve deputies. La. R.S. 33:9001, et seq., empower the sheriff to raise revenues to finance his facilities and services through the creation of a continuing legal entity in each parish known as a law enforcement district, whose corporate existence survives the term of office of any individual sheriff.

La.R.S. 33:9001 states:

"There is hereby created, in each parish except Orleans, a special district to be known as a law enforcement district for the purpose of providing financing to the office of sheriff for that parish. In the parish of Orleans such a special district is hereby created for the purpose of providing financing to the office of criminal sheriff. The provisions of R.S. 33:9002, 9003(D), 9007, 9008, and 9010 shall apply to the district created in the parish of Orleans. No other provisions of this Chapter shall be applicable thereto. The boundaries of each district shall be coterminous with

the boundaries of the parish and the duly elected sheriff of the parish or in the parish of Orleans, the criminal sheriff or his successor shall be ex officio the chief executive officer of the district." [1]

Therefore, a suit against Sheriff Hilton in his official capacity is actually a suit against the Rapides Parish Law Enforcement District.

Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. However, to be liable in one's official capacity under §1983, the defendant must have been delegated policy-making authority under state law. In essence, suing a party in his official capacity is duplicative of an action against the municipality which the official serves as an agent. City of St. Louis v. Praprotnik, 485 U.S. 112, 125, 108 S.Ct. 915 (1988). Also, Turner v. Houma Mun. Fire and Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000).

Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law. Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 361-362 (1991). In contrast, personal-capacity suits which seek to

---

[1] Law Enforcement Districts were discussed in City of Shreveport v. Caddo Parish, 27,519 (La.App. 2 Cir. 6/23/95), 658 So.2d 786, 794-795.

impose individual liability upon a government officer for actions taken under color of state law are recognized under § 1983. <u>Hafer</u>, 502 U.S. at 25. A state official can be sued in his individual capacity and be held personally liable under §1983 if it can be shown that the official, acting under color of state law, caused the deprivation of a federal right. However, such persons are entitled to assert qualified immunity. <u>Hafer</u>, 502 U.S. at 25-31.

Also, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. <u>Turner</u>, 229 F.3d at 483. An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. <u>Turner</u>, 229 F.3d at 484.

With regard to a cause of action for "failure to train", assessing an individual supervisor's liability under §1983 depends on a showing of (1) a "deliberately indifferent" policy of training that (2) was the "closely related" cause of the violation of the plaintiff's federally protected rights. <u>Doe v. Taylor Independent School Dist.</u>, 15 F.3d 443, 453 (5th Cir.), cert. den., 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). A plaintiff must prove that a deficiency in the training program is closely related to the ultimate injury. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989). Regarding the element of

causation, an isolated incident is not enough to show that a policy or custom exists. Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy. In order to be a policy, inadequate training must be a product of a conscious choice. Hood v. Itawamba County, Miss., 819 F.Supp. 556, 564 (N.D.Miss. 1993), citing, Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987), and Grandstaff v. City of Borger, Tex., 767 F.2d 161, 169 (5th Cir. 1985). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act, where the policy relied upon is not itself unconstitutional. Thompkins, 828 F.2d at 304. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the policymaker, for the officer's shortcomings may have resulted from factors other than a faulty training program; adequately trained officers occasionally make mistakes. City of Canton, 109 S. Ct. at 1206.

Plaintiff has shown no policy or custom on the part of the sheriff of failing to train, nor has he shown a failure to train caused a constitutional violation of plaintiff's rights which would invoke liability on the part of the sheriff. City of Canton, Ohio v. Harris, 109 S.Ct. 2018 (1978). Therefore, defendants motion for Summary Judgment should be granted on this issue.

Rougeou also asserts state law claims. Because there are no federal claims, this court should exercise its discretion to

decline to exercise pendant jurisdiction over plaintiff's state law claims.  Although Rougeou has asserted the pendant jurisdiction of this court, this court's resolution of plaintiff's §1983 claims makes dismissal, without prejudice, of Rougeou's state law claims proper.  District courts have "supplemental jurisdiction" over claims so related to a federal question "that they form part of the same case or controversy", 28 U.S.C. §1367(a).  Rodriquez v. Pacificare of Texas, Inc., 980 F.2d 1014, 1018-19 (5th Cir.), cert. den., ___U.S.___, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993); Whalen v. Carter, 954 F.2d 1087, 1097 (5th Cir. 1992).  The district courts may decline to exercise supplemental jurisdiction over a claim under §1367(a) if the district court has dismissed all claims over which it has original jurisdiction.  Rodriquez, 980 F.2d at 1018; Stephens v. LJ Partners, 852 F.Supp. 597, 600 (W.D.Tex. 1994); Holt v. Lockheed Support Systems, Inc., 835 F.Supp. 325, 329 (W.D.La. 1993).  In deciding whether to exercise supplemental jurisdiction, the court must consider judicial economy, convenience, fairness and comity.  Metropolitan Wholesale Supply, Inc. v. M/V Royal Rainbow, 12 F.3d 58, 61 (5th Cir. 1994).

Since Rougeou's constitutional claims should be dismissed as having no merit, as discussed below, I will recommend that plaintiff's state law claims be dismissed without prejudice, in the interests of judicial economy and comity.

There being no genuine issues of material fact, and the

individual defendants being entitled to qualified immunity, and all defendants being entitled to judgment as a matter of law, plaintiff's claims against defendants should be dismissed.

For the foregoing reasons, IT IS RECOMMENDED that defendants' motion for summary judgment, **Doc. # 26**, be GRANTED, that plaintiff's Section 1983 claims against defendants be DISMISSED WITH PREJUDICE, and that plaintiff's state law claims be dismissed without prejudice.

## **OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 24th day of July, 2006.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE